UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

**UNITED STATES OF AMERICA,**

    Case No. 3:12-cr-155

  **Plaintiff,**

    Judge Thomas M. Rose

**-v-**

**DAVID G. PAYNE,**

  **Defendant.**

---

**ENTRY AND ORDER DENYING PAYNE'S MOTION TO SUPPRESS EVIDENCE (Doc. #14) AND DENYING PAYNE'S MOTION TO SUPPRESS STATEMENTS (Doc. #17)**

---

  This matter comes now before the Court on two (2) Motions To Suppress filed in this case by Defendant David G. Payne ("Payne"). (Docs. #14 and 17.) Payne seeks to suppress evidence seized from the search of his home and any statements allegedly made by him.[1]

  The Court conducted a hearing on these two (2) Motions (the "5/1/13 Hearing"). (Doc. #23.) The Court also set a briefing schedule on these two (2) Motions. (Doc. #24.) Payne has filed a Brief In Support of Motion To Suppress Evidence, the Government has responded and Payne has replied. Neither party filed briefs regarding Payne's Motion To Suppress Statements. The time has run and the two (2) Motions To Suppress are ripe for decision. The findings of fact will first be set forth followed by the relevant legal provisions and an analysis of the Motions.

## FINDINGS OF FACT

  Payne has been indicted on drug trafficking and felon-in-possession-of-a-firearm charges.

---

[1] Payne offers no further argument regarding any statements he made during custodial interrogation without the benefit of Miranda warnings.

(Doc. #3.) Payne's trial is currently scheduled to begin on September 3, 2013.

In the Spring of 2012, the Bellefontaine Police Department ("BPD") received a complaint from a local business concerning potential drug trafficking activity at or around 117 Powers Street ("Powers Street Residence"). (Transcript of 5/1/13 Hearing ("Tr.") 34.) Following receipt of this tip, BPD Detective Comstock conducted several spot checks on the Powers Street Residence. (Id. at 34.) Officer Comstock wanted to search the Powers Street Residence but had no legal justification for doing so. (Id. at 50.) However, during this surveillance, Detective Comstock observed female Erin Ratleff ("Ratleff") coming and going from the Powers Street Residence. (Id. at 35.)

Ratleff was on post release control under the supervision of Parole Officer Chris Niekamp of the Logan County office of the Ohio Adult Parole Authority ("APA") (Id. at 14.) At the time she agreed to her conditions of supervision, Ratleff provided Officer Niekamp with the residence of her mother as the location where she was living. (Id. at 15.) She also acknowledged her obligation to immediately inform Officer Niekamp of any changes in residency. (Id. at 15, Ex. 6.) Finally, Ratleff agreed that any property where she was actually living would be subject to search by Officer Niekamp. (Id. at 17, Ex. 6.)

During the time that Detective Comstock was surveiling the Powers Street Residence, he ran across Ratleff in the Bellefontaine community. (Id. at 35.) Detective Comstock observed Ratleff driving cars associated with the Powers Street Residence approximately 20 or 25 times. (Id. at 36.) The cars that Detective Comstock associated with the Powers Street Residence were registered with Payne or Ratleff's mother. (Id. at 35.) Finally, Detective Comstock knew that Ratleff was on post release control. (Id. at 14, 17, 20, 40, 50, 53.)

In 2012, Detective Comstock contacted the owners of the Powers Street Residence and obtained the current rental agreement. (Id. at 37.) This Rental Agreement is for the period of July 1, 2011 through June 30, 2012, automatically renewed at the termination of each 12 month lease period. (Id. Ex. 1.) Payne and Ratleff are listed as the tenants and both signed the Rental Agreement. (Id.) Included is a handwritten addendum dated 8/11/12 which states that, "Tenants agree to rent month to month while home is listed for sale. Tenant will receive 30 days to vacate home when home sells. Agrees to all other terms of rental agreement." (Id.) Finally, the owners of the Powers Street Residence told Detective Comstock that they were aware that Payne and Ratleff were living there together. (Id. at 37.)

Detective Comstock informed Officer Niekamp of the ongoing surveillance connecting Ratleff to the Powers Street Residence and of the Rental Agreement. (Id. at 37-38.) Officer Niekamp then became concerned that Ratleff had changed her residence without notifying the APA. (Id. at 20.)

On May 8, 2012, Ratleff had met with Officer Niekamp to review the conditions of her supervision. (Id. at 15.) Ratleff advised Niekamp that she was staying with her mother at that time. (Id.) Ratleff never informed Niekamp that she had taken out a lease on the Powers Street Residence. (Id. at 31.)

Following this meeting, Officer Niekamp stopped by Ratleff's mother's apartment several times. (Id. at 16.) During these visits, he never made contact with Ratleff there. (Id.)

On one visit, Officer Niekamp did make contact with Ratleff's mother. (Id.) Ratleff's mother told Officer Niekamp that Ratleff lived in the apartment but she also stays some with Payne. (Id. at 28.) Also, based upon what Officer Niekamp saw and did not see at Ratleff's

-3-

mother's apartment and knowing that Ratleff was unemployed, he questioned whether Ratleff actually lived there. (Id. at 16.)

Given his concern that Ratleff did not actually live at her mother's apartment but had not reported a change of residence, Officer Niekamp and Detective Comstock established surveillance of the Powers Street Residence during the morning of August 21, 2010. (Id. at 20.) Detective Comstock had agreed to assist Officer Niekamp investigate the Ratleff's possible parole violation. (Id. at 53.) Detective Comstock also believed that the surveillance may advance his own investigation of potential drug trafficking activity at the Powers Street Residence, which potentially implicated Ratleff. (Id. at 54-55.)

While on this surveillance, Officer Niekamp and Detective Comstock observed a car parked in front of the Powers Street Residence that Officer Niekamp had previously seen Ratleff drive on her visits to the APA. (Id. at 22.) This car that Officer Niekamp had previously seen Ratleff driving was registered to Payne. (Id.)

Officer Niekamp and Detective Comstock observed Ratleff come out of the Powers Street Residence. (Id. at 20.) They approached Ratleff and met her on the sidewalk. (Id.) Officer Niekamp, who was well-known to Ratleff, said, "Erin, I need to speak to you, … The gig is up. I know you are not living where you say you are. I know that you are living here." (Id. at 21.) At that point, Ratleff became very emotional and began crying. (Id.)

Officer Niekamp told Ratleff that "[w]e need to go in the house." (Id.) Based upon Ratleff's reaction when confronted along with the lease agreement for the Powers Street Residence, the multiple observations of Ratleff at the Powers Street Residence including her presence there on August 21, the fact that Ratleff was not denying living at the Powers Street

Residence, and not being able to locate her at the residence were she said she was living, Officer Niekamp was positive that Ratleff was living at the Powers Street Residence. (Id. at 21.)

Given this belief, Officer Niekamp asked Ratleff to step inside the Powers Street Residence. (Id.) As they entered the Powers Street Residence, Officer Niekamp observed Payne sitting on a couch preparing to roll a joint. (Id. at 22.) There is no evidence that Payne consented to the search of the Powers Street Residence. Payne was stood up and handcuffed to ensure everyone's safety. (Id.)

Officer Niekamp then briefly spoke with Ratleff. (Id. at 22-23.) Ratleff confirmed that she lived at the Powers Street Residence. (Id.) Officer Niekamp then conducted a parole search of the Powers Street Residence. (Id.) Officers found a firearm and various controlled substances in the residence. (Id. at 42.)

## RELEVANT LEGAL PROVISIONS

Payne challenges the warrantless search of the Powers Street Residence. The Government responds that it conducted an authorized parole search of the Powers Street Residence. Thus, the relevant legal provisions for parolee searches will be set forth.

The Fourth Amendment to the United States Constitution protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. Thus, the "touchstone" of the Fourth Amendment is reasonableness. *United States v. Knights*, 534 U.S. 112, 118 (2001).

"[T]he reasonableness of a search is determined by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests." *Id.* at 118-19 (citing *Wyoming v.*

*Houghton*, 526 U.S. 295 (1999)). This assessment weighs in favor of a determination that a suspicionless search of a parolee with conditions of supervision permitting searches without a search warrant and without cause is reasonable. *Samson v. California*, 547 U.S. 843, 852-53 (2006). This assessment is not altered where a parolee shares a home with someone else. *United States v. Bolivar*, 670 F.3d 1091, 1093-94 (9th Cir. 2012); *Motley v. Parks*, 432 F.3d 1072, 1079 (9th Cir. 2005), *overruled* on other grounds by *United States v. King*, 687 F.3d 1189 (9th Cir. 2012)..

To be considered reasonable, officers must have either reasonable suspicion or probable cause to believe that a parolee lives at the residence to be searched. *United States v. Crutchfield*, 444 F. App'x 526, 528 (3d Cir. 2011). Probable cause, the higher standard, exists so long as the facts and circumstances within the officer's knowledge and of which the officer had reasonably trustworthy information are sufficient in themselves to warrant a person of reasonable caution to believe that the parolee lives at the residence or committed a violation. *See United States v. Davis*, 430 F.3d 345, 352 (6th Cir. 2005).

## ANALYSIS

. The facts that Ratleff was under the supervision of the APA, had given Officer Niekamp the residence of her mother as the location where she was living, had an obligation to immediately inform Officer Niekamp of any changes in residency and had agreed that any property where she was actually living would be subject to search by Officer Niekamp are not in dispute. What is in dispute is whether Officer Niekamp had probable cause to believe that Ratleff was living at the Powers Street Residence.

The totality of the circumstances known to Officer Niekamp provided him with probable

cause to believe that Ratleff was living at the Powers Street Residence and, thus, was in violation of the terms of her supervised release. Officer Niekamp knew that Detective Comstock had observed Ratleff at the Powers Street Residence on multiple occasions during the Spring and Summer of 2012. Officer Niekamp reviewed a lease agreement identifying her as one of the tenants of the Powers Street Residence from July 1, 2001 to June 30, 2012, a lease that Ratleff had not revealed to Officer Niekamp. Even though a handwritten addendum extending this lease on a month-to-month basis was signed only by Payne, the landlords advised Detective Comstock that both Payne and Ratleff resided at the property. In addition, Officer Niekamp was unable to confirm that Ratleff lived at the address where she had reported that she lived. Finally, on August 24, 2012, when Officer Niekamp informed Ratleff that he knew that she was living at the Powers Street Residence, Ratleff offered no denial and became emotional.

## CONCLUSION

Because Officer Niekamp had probable cause to believe that Ratleff was living at the Powers Street Residence, the search of that residence in her presence did not violate the Fourth Amendment. The presence and additional motive of Detective Comstock during the search is irrelevant. As a result, Payne's Motion To Suppress evidence seized from the search of the Powers Street Residence (docs. #14) is DENIED. Also, because Payne has not pursued his Motion To Suppress statements (doc. #17), it too is DENIED.

**DONE** and **ORDERED** in Dayton, Ohio this First Day of August, 2013.

s/Thomas M. Rose

_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE

Copies furnished to: Counsel of Record